(Filed March 24, 1884.)

# Commonwealth, ex rel. Sellers *versus* Phœnix Iron Co. et al.

1. A stockholder in a private corporation, who is denied access to corporate records and information as to corporate affairs, may, in certain cases, have a mandamus to compel the production of such books and papers as are essential to him for some proper and definite purpose, such as an accurate ascertainment and legal assertion of his rights as a stockholder.

2. A. filed a petition for an alternative mandamus against a corporation and the directors thereof, alleging that he held a large amount of the stock, that the works were extensive and the business prosperous, that, notwithstanding, no dividend had been declared for nine years; that the principal part of the company's business had been absorbed by a partnership, whereof the president of the company and two of its directors constituted a majority of the partners; that there was a contract of partnership between the company and said firm, whereby the said president and directors took advantage of their position to advance their private

[Commonwealth *v.* Phœnix Iron Co.]

interests to the disadvantage of the corporation, and that the corporation had transferred real estate to trustees to secure an alleged indebtedness to the estate of a former president, the trustees being interested in said estate; that at a meeting of stockholders of the corporation, as well as at other times, relator had asked for information, which requests had always been refused, and that he proposed filing a bill in equity against the corporation and its officers, for which purpose it was necessary that he should see the books and papers in order to state the facts correctly.

*Held :* That the writ should issue for the production of such books and papers as contained information upon the subject specified in the prayer of the petition.

January 18th, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ.   GREEN, J, absent.

ERROR to the Court of Common Pleas No. 2, of *Philadelphia county :* Of July Term 1883, No. 105.

This was a petition by George H. Sellers for a writ of alternative mandamus against the Phœnix Iron Company, David Reeves, president, James O. Pease, treasurer, George Geary White, secretary and director, and William H. Reeves, John Griffin and Carroll S. Tyson, directors of the said company, commanding and requiring them at reasonable times to give the petitioner and his clerks access to certain books and papers of the said company.

The facts set forth in the petition were substantially as follows :—

That the Phœnix Iron Company was incorporated by an Act of Assembly, approved April 27, 1855, for the purpose of manufacturing iron, etc. with a capital stock of $500,000, divided into 5000 shares of the par value of $100 each, the affairs of the company to be managed by a board of directors, "one of whom shall be president who shall be chosen by the stockholders," and the corporation "may do and make all needful rules, regulations, and by-laws for the well ordering of its business affairs." That the by-laws made in pursuance of said charter require that the treasurer shall keep a regular set of books containing the accounts of the company and all its funds, and "at the annual meeting he shall present a complete statement of his accounts for the year ending the last day of March."

That the petitioner in November, 1866, purchased 238 shares of the stock of the company, and, practically, all the balance of the stock is held by David Reeves and William H. Reeves, for themselves and their sisters, the other directors holding nominally one share each for the purpose of retaining their offices as directors. That the property of the company has at the present time so far increased in value as to be worth according to the estimate contained in a pamphlet issued by the directors

of. the company at least six times the par value of its capital stock, and its average profits in its business is at least 15 per cent. That although it is the duty of the board of directors under the charter of the company to make dividends of the actual net profits, there have been no dividends declared during nine years past, and the petitioner's stock is therefore valueless to him.

That the enormous profits of the company are absorbed by means of its business being transferred to a private firm doing business as Clark, Reeves & Co., the members of which firm are the said David and William H. Reeves and John Griffin, in conjunction with others, with which firm the company has formed a copartnership in violation of its charter, thus enabling the said Reeves and Griffin to advance their private interests to the disadvantage of the company.

That in 1875 the company transferred to trustees certain of its real estate to secure an indebtedness alleged to be due the estate of David Reeves, a former president, the trustees named in said deed being W. H. Reeves and Carroll S. Tyson, both of whom are directly or indirectly interested in the distribution of said estate, and said deed of trust authorized said trustees to sell any of said real estate at public or private sale for such terms as they saw fit, and pay themselves commissions out of the proceeds.

That the petitioner has been denied all information as to the business of the corporation, the value of its stock, the relations between itself and its officers in their capacity as members of Clark, Reeves & Co., etc., though repeatedly requesting the same, and though such information is necessary in order to enable him, as he purposes doing, to file a bill in equity against said corporation and its officers, for the purpose of restraining them from the further commission of the acts complained of.

The petitioner therefore prayed for a writ of alternative mandamus to be issued to the respondents requiring them at reasonable times to give to relator, with his clerk or clerks, access to all the books and papers of the Phœnix Iron Company he may require in order to ascertain—(1.) What salaries are now and have been, during the last ten years, paid to the officers. (2.) What compensation has been paid to its officers as trustees of its real estate, and in other ways, if any, beyond their salaries. (3.) What items constitute the indebtedness alleged to be due to the estate of the late David Reeves. (4.) What sums have been divided between The Phœnix Iron Company and Clark, Reeves & Co. under their contract. (5.) What profits have been realized from the joint operations under their contracts. (6.) What dispositions have been
9 OUTERBRIDGE.—8.

made of the entire receipts of the corporation. (7.) What authority there was for the conveyance of the real estate of the company, made February 1, 1875. Or, that a rule on the said respondents may be granted to show cause why a mandamus should not be issued for the purposes aforesaid.

The same day the Court granted a rule upon respondents to show cause why a writ of alternative mandamus should not issue ; subsequently, after hearing, the Court discharged the rule (no opinion filed). ·

Thereupon, the plaintiff took this writ, assigning for error the action of the Court in discharging the rule.

*Samuel W. Pennypacker* and *John G. Johnson* for plaintiff in error.—Where a specific duty is imposed by law upon a private corporation, and no other adequate or specific remedy is provided for its enforcement, the writ of mandamus will be granted ; Rex *v.* Barker, 3 Burrows, 1265 ; High on Extra. L. Rem., § 277 ; Rex *v.* March, 2 Burrows, 999 ; White's Case, 2 Lord Raymd., 1004 ; Da Costa and the Russia Co., 2 Strange, 783 ; Rex *v.* Wildman, 2 Strange, 879 ; Rex *v.* Worcester Canal, 1 M. & R., 529 ; Commonwealth *v.* Dennison, 24 How., 97 ; Prieur *v.* Bank of Louisiana, 7 La. Rep., 509 ; Delacy *v.* Navigation Co., 1 Hawks., 274 ; American R. R. Frog Co. *v.* Haven, 101 Mass., 405 ; State *v.* Chamber of Commerce, 20 Wis., 73 ; Angel & Ames, § 700 ; Commonwealth *v.* Keim, 38 Leg. Int., 32 ; Commonwealth *v.* Coxe, 1 Leg. Chron. Rep., 89.

A stockholder in a business corporation has a right to inspect the books and papers, for a specific purpose, at reasonable times, and if refused, mandamus is his remedy. The facts set forth in our petition clearly bring the case within this rule ; Angell & Ames, §§ 681, 682, 700, 707 ; Burton *v.* Saddler's Co., 31 Law Journal Q. B., 62 ; Rex *v.* Merchant Tailors' Co., 2 B. & A., 115 ; Redfield on Railways, 227 ; Willcock on Municipal Corp., 347 ; Martin *v.* Bienville Oil Works, 28 Louisiana Annual Rep., 204 ; Bank *v.* Knapp, 3 Pick., 108 ; State *v.* Accommodation Bank, 28 Louisiana Annual Rep., 874 ; People *v.* Walker, 9 Mich. 330 ; People *v.* Cornell, 35 How. Pr., 31 ; People *v.* Throop, 12 Wend., 183 ; Southampton *v.* Graves, 8 Term, 590 ; King *v.* Tower 4 M. & S., 162 ; Rogers *v.* Jones, 5 Dow. & Ryl., 484 ; King *v.* Babb, 3 Term, 579 ; Cockburn *v.* Union Bank, 13 Louis. Ann. Rep., 289 ; People *v.* Onderdonk, 1 How. Pr. Rep., 247.

*R. C. McMurtrie* and *Wayne MacVeagh* for defendants in error.—The writ of mandamus goes only where there is a specific legal right and the absence of a specific legal remedy. James

v. Bucks Co., 1 Harris, 72; Commonwealth v. Councils of Pittsburgh, 10 Cas., 496.    This writ is never granted except for public purpose: Rex v. Bank of England, 2 B. & Ald., 620; Rex v. Clear, 4 B. & C., 899; Equitable rights are not the subject of this remedy.   Birmingham v. White, 1 Q. B., 282; People v. Throop, 12 Wend., 183; People v. Pacific Mail, 3 Abbott P. C., N. S., 364; Rex v. Merchant Tailors, 2 B. & Ad., 126; Wordsworth on Joint Stock Companies, 335; Tapping on Mandamus, 97; Hatch v. City Bank, 1 Rob. La., 491; Reg. v. Mariquita Co., 1 E. & E., 289; Rex. v. Wilts, 3 A. & E., 477; Rex v. Clear, 4 B. & C., 899; Reg. v. London, 31 L. T. N. S., 588; Metropolitan v. Hawkins, 4 Hurlst. & N., 146.

The permission to inspect the books, etc., when not given by charter is not a corporate duty, but a matter of corporate discretion, which a majority may control.    Lindley Part., p. 830. Otherwise the stockholders' bill was invented to no purpose. A statutory provision is necessary to give the right claimed here:   People v. Pacific Mail SS. Co., 50 Barbour, 282.

The cases cited on the other side relating to partnerships are inapplicable.   In a partnership no one can become a member except by the will of the other partners; but any one can buy stock and become a member of a corporation against the will, and, may be, against the interest of the other members.    The distinction is radical.   Each partner is entitled to know all that any other partner knows; but a corporator has only such rights as the law and the charter give him, and to intrude into the private secrets of the management is not such a right.    Only a director can do that, because of his duty of management.    People v. Throop, 12 Wend., 183.

Mr. Justice TRUNKEY delivered the opinion of the court, March 31st, 1884.

The right of shareholders in large partnerships and companies, to inspect accounts, is usually qualified by express agreement; but it requires no express agreement to confer the right, for that is a consequence of partnership.   If a company's deed of settlement provides for the inspection of its accounts by its shareholders at certain times and subject to certain restrictions, it seems they are not entitled to inspect the accounts otherwise: Lindley on Part., 809.    This writer also says that the right of inspection of the accounts of such companies is necessarily limited, for if every shareholder were at liberty to examine the accounts whenever he desired to do so, it would be impracticable even to keep them or make them up in a proper manner; and he apprehends that when there is no agreement to the contrary, the shareholders are entitled to have them produced at their meetings and to appoint persons to

inspect and examine them. Perhaps nobody would question the correctness of these views. But they do not reach the case of a minority, powerless by vote to call for production of the books, or to make appointment of persons to inspect. In the absence of agreement every shareholder has the right to inspect the accounts, a right subject to the necessities of the company's business, yet existing. It has never been asserted that a partner in a large company, under pretence of inconvenience, can at all times be lawfully denied inspection of its accounts, unless the denial rests upon his own agreement. For proper purposes and at reasonable times the law gives him the right, even if its exercise be inconvenient to the book-keepers and managers of the partnership business.

Unless the charter provides otherwise, a shareholder in a trading corporation has the right to inspect its books and papers and to take minutes from them, for a definite and proper purpose, at reasonable times. The doctrine of the law is, that the books and papers of the corporation, though of necessity kept in some one hand, are the common property of all the stockholders: Angell & Ames' Corp., § 681; Redfield on Railways, 227; Grant on Corp., 311; 2 Phillips on Evi., 313; Martin *v.* Bienville Oil Works, 28 Lou. Ann. Rep., 204. Cases may have been rare in which it was held that a shareholder was entitled to an extraordinary remedial writ for the enforcement of his right to inspect the books, but that does not evidence non-existence of the right. Text books and dicta of courts seem to have treated the right of shareholders in joint stock corporations, to inspect the accounts and papers, as similar to that of members in large partnerships where managers are appointed to transact the business. The necessary limitations practically prevent exercise of the right for speculative purposes, or gratification of curiosity; if every shareholder could inspect for such purposes, at his own will, the business of most corporations would be greatly impeded. In Rex *v.* Merchant Tailors' Co., 2 Barn. & Ad., 115, TAUN-TON, J., said: "There is no express rule that to warrant an application to inspect corporation documents there must actually have been a suit instituted; but it is necessary that there should be some particular matter in dispute, between members, or between the corporation and individuals in it; there must be some controversy, some specific purpose in respect of which the examination becomes necessary." This concisely puts the circumstances in which the shareholder may have specific remedy, if refused permission to inspect corporation documents and books: but if the right itself were not clear, he could not have that remedy at all.

It was conceded at the argument that a mandamus may be

issued to a private corporation to compel the exercise of a franchise, or to restore an evicted person to his office or membership, or to compel performance of a duty imposed on a corporate official, expressly or by implication. The old rule was that the writ was only to be issued in cases of public interest or having some relation to public officers or rights: Tapping on Mand., 12, 97. But the tendency in modern times is to grant a mandamus in certain cases where formerly it would have been refused; and the prerogative writ will go to compel " the production to a shareholder, for a proper purpose and at a proper time of such books as he has a right to inspect": Lindley on Part., 1037. And this was said of the writ and cases without the common law procedure Act of 1854, plainly showing that the distinguished author was of opinion that the right of a shareholder to inspect the books of the corporation of which he is a member, exists at common law, and in a proper case may be enforced by mandamus. " Corporators have always, on showing a good reason, though not for curiosity's sake, a right of access to, and inspection of, all the books, muniments and papers belonging to the corporation, and if this general right be denied or obstructed, a mandamus to inspect may be had on proof of the refusal of the right to, and reason for the inspection: " Grant on Corp., 311; see Angell & Ames on Corp., § 707; High on Extra. L. Rem., § 308. In Rex *v.* Merchant Tailors' Co., *supra*, decided half a century ago, it was held that the court will not grant an application by members of a corporate body, for a mandamus to inspect the documents of the corporation, unless it be shown that such inspection is necessary with reference to some specific dispute or question depending, in which the parties applying are interested; and the inspection then will only be granted to such extent as may be necessary for the particular occasion; and the writ was refused because the applicants merely alleged grounds on which they believed the affairs of the corporation were improperly conducted, and the officers unduly chosen, and complained of mismanagement in some particular instances not affecting themselves, or any matter then in dispute. The doctrine declared in that case is the foundation of the rule in the text books, and the writ was refused solely on the insufficiency of the affidavits to make a case within the rule. Thirty years afterwards, CROMPTON, J., referring to Rex *v.* Merchant Tailors' Co., as a leading case, said: " I take the result of the cases to be that a mandamus may go against a corporation at the instance of a member of the corporation to inspect and see whether he can raise a particular case in his favor by examining the books. It must in my view be a case with reference to some defined, distinct

dispute, as to which it appears that it might be to his advantage to see the minutes of the corporation." After noting the contention of the company that a remedy existed by *quo warranto,* he adds: "The applicant who has no access to the documents of the corporation, would be able to make an affidavit of belief only as to the existence of the custom on which he founds his claim, while the corporation, who hold all the books, might set forth the entries making against the existence of the custom, and thus from want of access to the books the party might be prevented from getting his rule." A mandamus was awarded for the applicant and his attorney to inspect the minutes of the corporation as to the elections of the assistants, that being the matter in dispute. Burton *v.* The Saddlers' Co., 31 Law Jour. R., 62. In the late case of Martin *v.* Bienville Oil Works, 28 Lou. Ann. R., 204, it was ruled that a stockholder of the corporation has a right to know how its affairs are conducted; that the board of directors, authorized by the charter to exercise all the powers of the corporation, could not rightfully deprive him of personal inspection of the books and papers that he might learn the condition and affairs of the company so that he could vote understandingly at a meeting of the stockholders; and upon showing that the directors had concealed from him the facts, he is entitled to relief by mandamus. One of the judges, on the ground that a stockholder's right to inspect is strictly personal, dissented from so much of the order as allowed inspection by agent— upon the main question there was no division. This case may go farther than is necessary for protection of the interests of individual shareholders, and is not cited for unqualified approval. Were it established that every stockholder may have a mandamus to enforce his right of inspection for the mere purpose of enabling him to vote understandingly, where the stockholders are numerous, there would likely result great inconvenience and hindrance in the conduct of the business of the corporation. The interests of all the corporators require that the writ shall not go at the caprice of the curious or suspicious. It would seem from the weight of authority, and in reason, that a shareholder is entitled to mandamus to compel the custos of corporate documents to allow him an inspection, and copies of them, at reasonable times, for a specific and proper purpose, upon showing a refusal on the part of the custos to allow it; and not otherwise. What would be a fit occasion is well indicated by the remarks of the court in Burton and The Saddlers' Co.; and they apply in case of other grievances of a shareholder as well as to the particular one of which he was speaking.

Among the cases cited at argument are two where it was

said that mandamus is confined to cases of a public nature, and will not be awarded to a trading corporation. In The King *v.* Bank of England, 2 B. & Ald., 620, the application was by a stockholder for the writ to compel the governor and company of the bank to produce their accounts and declare a dividend. The King *v.* London Assurance Co., 5 B. & Ald.. 899, was a petition for a mandamus to compel a transfer of shares standing in the name of a bankrupt stockholder to his assignees. There was no ground for the writ in either case. The examination of accounts and division of profits may effectually be gone into in a court of equity. For a refusal to transfer shares of stock the injured party has an adequate remedy in an action for damages. But these decisions are based on the old rule which has been superseded, so far as the opinions go.

Statutory regulations in some states respecting the right of shareholders to inspect the books and muniments of corporations, and cases within such statutes, cast little if any light on the question now pending. It cannot be inferred from those enactments in other states that in this there is no such right of inspection at common law, or that in a fitting case a shareholder shall not have the appropriate remedy to secure its enjoyment specifically.

Has the relator shown such facts as entitle him to an alternative mandamus? The capital stock of the corporation is $500,000, divided into shares of $100 each, a majority of which is owned by David Reeves, president, and William H. Reeves, one of the directors. Its works are extensive and its business apparently prosperous, for the last ten years averaging over $2,000,000 per annum ; yet no dividend has been declared for the last nine years. In 1866 the relator purchased 238 shares of the stock for $38,500, and still owns 234 shares. The principal part of the business of the corporation has been absorbed by a partnership in name of Clark, Reeves & Co. ; the said Daniel Reeves and the said William H. Reeves and John Griffin, a director of said corporation, are partners and a majority of the partners in said firm of Clark, Reeves & Co. ; and the relator avers that there is a contract of copartnership between the corporation and said firm, and that said president and two directors take advantage of their positions to advance their private interests as members of the firm to the disadvantage of the corporation. Every director holds a salaried position under the corporation. In 1875, the corporation transferred real estate of great value to secure alleged indebtedness to the estate of David Reeves, deceased, the trustees being interested in said estate.

Although a large stockholder for a long time, the relator

has enjoyed neither income from his stock nor the privilege of knowing how the receipts from the business of the corporation are expended.   His knowledge of the conduct of the business is that which is common to strangers, to the public.   At a meeting of the stockholders he asked for information, and they refused to permit the minutes to be read, or papers to be examined.   His request to the president of the company that a time and place would be named when and where it would be convenient for him to examine such books of the company as would give him information of the items of inventories, bills receivable, salaries of officers and minutes of meetings, was refused.   His demand at the office of the corporation, during business hours, of the officers and directors, for access to the books and papers which would give him information upon subjects which he named, was refused.   In those things that he named he is as directly interested as any other stockholder; but they are concealed from him by the directors and officers of the corporation who own a majority of the stock. The surface indications are that the business of the corporation has been profitable as well as large, and that the profits have been wrongfully appropriated by those who control the business, to the injury of the relator.   Were an inner view permitted, he might see that there had been no profits, no misappropriation of moneys, and that all that has been done was well done for the interest of every shareholder.

The relator avers that he purposes filing a bill in equity against the corporation and its officers, and that it is necessary that he see the books and papers in order that he may correctly state the facts now concealed from him.   Upon learning the facts he may abandon his purpose for want of matter of complaint.   He desires " to inspect and see whether he can raise a particular case in his favor by examining the books;" upon the verity of the facts set forth in his petition, we are of opinion that he is entitled to an alternative mandamus.   The writ should not extend to any books and papers other than such as contain information upon the subjects specified in the prayer of the petition.

> The order discharging the rule to show cause is reversed, and judgment for the Commonwealth that an alternative mandamus be issued. Record remitted for further proceedings.