## Kuhbach v. Irving Cut Glass Company, Appellant.

*Mandamus—Alternative mandamus—Awarding writ—Waiver of irregularities—Return—Practice, C. P.*

Where the court in making an order for mandamus against a corporation inadvertently uses the word "issued" instead of "awarded," and the prothonotary instead of issuing the writ of mandamus prepares a certified copy of the petition and order of court, which the sheriff serves upon the president of the company, the proceeding is wholly irregular. The prothonotary should issue a writ in the alternative form demanding the respondent to do the things required in the order of the court. Such irregularity, however, may be waived by an agreement that the paper served on the president shall be regarded as an alternative writ, followed by a return made by the president "for himself and the other respondents, officers of the said corporation." It is no argument that the agreement should not be enforced, because the president would otherwise have been subject to an attachment.

*Corporations—Stockholders' rights to inspect books—Mandamus.*

Where a stockholder furnishes sufficient data to warrant the conclusion that there is mismanagement and that the affairs of the company are not conducted in a proper manner and in the interests of the stockholders, he has a right to demand of the officers of the company permission to examine the books, records and accounts of the corporation so that he may protect his interests by a bill in equity or otherwise; and if the demand is refused and he makes application to the court to enforce it, a mandamus should be awarded. The mere fact that the relator in such a proceeding is a stockholder in a competing company, is not of itself sufficient to deprive him of the relief which he seeks by mandamus; nor is an offer by the defendant company to buy the relator's stock at a price fixed by the company a sufficient answer to his demand for an inspection of the books and papers of the company.

At common law a stockholder of a trading corporation has a right to examine the books and papers of the company at a reasonable time and place, and for a proper purpose.

Argued Feb. 24, 1908. Appeal, No. 264, Jan. T., 1907, by defendant, from order of C. P. Wayne Co., March T., 1907, No. 99, awarding mandamus in case of John Kuhback v. Irving Cut Glass Company. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Petition for mandamus. Before PURDY, P. J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in awarding writ of mandamus.

*H. Wilson*, with him *P. H. Iloff*, for appellant.—The relator had no proper purpose for the examination of the books : Com. v. Pass. Ry. Co., 133 Pa. 237; Rex v. Merchant Tailors' Co., 2 B. & A. 115 ; Com. v. Coit, 15 W. N. C. 484.

*Charles A. McCarty*, for appellee.—Plaintiff was entitled to the writ : Neubert v. Armstrong Water Co., 211 Pa. 582 ; Com. v. R. R. Co., 3 Pa. Dist. Rep. 115 ; Com. v. Phœnix Iron Co., 105 Pa. 111.

OPINION BY MR. JUSTICE MESTREZAT, March 16, 1908 :

This is a mandamus to compel the defendant company, a trading corporation, to permit the relator, a stockholder, to inspect its books and records. The objections of the defendant to the petition, the order of the court, and the form of the writ and its service were well taken and would have to be sustained if they had not been waived. The Act of June 8, 1893, P. L. 345, 3 Purd. (13th ed.) 2424, prescribes the mode of procedure in mandamus proceedings. The petition should contain the jurisdictional facts, and upon its presentation the court should award an alternative writ. The writ, as in other cases, should be issued by the prothonotary in the usual form. In this case, however, the court in making the order inadvertently used the word "issued" instead of "awarded," and the prothonotary instead of issuing the writ of mandamus prepared a certified copy of the petition and order of court which the sheriff served upon the president of the company. This was wholly irregular and not a compliance with the well-established practice in such cases. The prothonotary should have issued a writ in the alternative form commanding the respondent to do the things required in the order of the court.

The defendant company, however, waived all defects in the proceedings prior to the return. It agreed that the papers served on the defendant's president should be regarded as an alternative writ of mandamus, and filed a return thereto. By filing a return in pursuance of this agreement, the company waived all the irregularities in the proceedings. The papers were served only on the president of the company, but he made a return "for himself and the other respondents, officers of said

corporation." The plaintiff took chances in failing to name the officers, as contemplated by section 7 of the act of 1893. The papers were served only upon George H. Reichenbacher, and of course he is the only one who could be compelled to make a return to the writ. He, however, as president of the company, has answered for all the officers of the corporation, and they are, therefore, in court and subject to its orders.

It has been argued that defendant's agreement that the papers should be considered as an alternative writ of mandamus should not be enforced, because the president of the corporation would otherwise have been subject to an attachment. But this is not sufficient to relieve it from the agreement, because if an attachment had been awarded, it could have been superseded by an appeal, and that would have prevented the enforcement of the attachment against the president until the appeal was disposed of. We notice the irregularities in the proceedings so that our silence may not be construed to mean a tacit approval of the defective pleadings.

The case was heard below on the petition, the return and a demurrer to the return. The court awarded an alternative writ requiring the defendant to give the relator, with his clerk or clerks, access to all the books, records and papers of the company, or such of them as he may require in order to secure information regarding the matter set forth in the petition. The petitioner purchased at public auction on June 2, 1906, eight shares of the stock of the corporation, owned by the estate of Peter Crockenberg, one of the eight original stockholders; and subsequently the company issued to Kuhbach a stock certificate. He requested the company to give him information as to its condition, the volume of business done, the amount of profits and the financial standing of the company. The information was refused. He also made a request of the officers for permission to examine the books, records and papers of the company, including pay roll, sales book, debits and credits of the company. This request was likewise refused. The relator then filed this petition setting forth certain facts alleged to show reckless mismanagement of the corporation by its officers, and praying for a mandamus on the officers of the company to compel them to permit him to inspect the books and papers of the company and thereby acquire cer-

tain specific information to enable the relator, if necessary, to file a bill in equity to restrain the mismanagement which exists in the company. The petitioner avers that the company gave him a statement showing the alleged standing of the company on January 1, 1907; that if the statement is correct and shows the actual condition of the affairs existing in the company it discloses reckless mismanagement of the company's business to such an extent that steps should be taken to correct the apparent mismanagement which exists in the company; that if the statement is false, he is entitled to know what the real condition of affairs is in the company in which he has his money invested. The petitioner then states in detail some items in the statement furnished him which he alleges sustain the allegation of mismanagement. In addition to what is disclosed by the items in the statement referred to, he alleges, what has not been denied by the return, that the company was very prosperous and paying large dividends up till July 25, 1904, and that since that time it has not declared a dividend, but is in debt as shown by its statement. The petitioner further avers that if the company is permitted to conduct its business in the manner shown by the statement furnished him on January 1, 1907, it will soon become insolvent and perhaps necessitate a dissolution of the corporation. It is further averred that the petitioner has been denied all information by the officers of the company as to the business of the company, and that such information is necessary in order to enable the petitioner, as he purposes doing, to file a bill in equity against the company and its officers for the purpose of restraining them from the further commission of the acts complained of.

The return does not deny certain facts alleged in the petition, which we think are material and sufficient to warrant the court in granting the relief which the relator seeks. It does deny, however, the allegations of mismanagement of the business of the corporation, or that its business has been conducted in a way and manner injurious to the stockholders. It alleges that the relator in making a demand for the inspection of the books is not acting in good faith for the reason that he is a director in a competing glass company and desires the information that it may be used to the advantage of that company.

It is averred in the petition, and not denied by the return,

that the business of the company was very prosperous prior to July 25, 1904, when Peter Crockenberg died. He was the owner of the five shares sold at auction and purchased by the relator. During the four years prior to the death of Crockenberg the earnings of the company amounted to 320 per cent on its capital stock. Since his death, and while the relator has owned the stock, a period of about three years, no dividends have been paid or declared by the corporation. The statement of January 1, 1907, shows, among other things, $3,780 due the incorporators for wages, and $1,244.40 loaned by them to the corporation and secured by notes, making a total of $5,024.40 due the incorporators who are also directors of the company. The statement further shows a bank note for $2,000, bills payable amounting to $2,199 and more than $800 due as commissions and expense of salesmen. There is also, as appears by the statement, a mortgage on the building for $6,300. The petition further avers that, from his knowledge of the company's business, he believes that the capital stock should now be worth many times its original par value, and that a dividend of at least ten per cent should be declared by the company if its business had been properly, intelligently and economically transacted.

We think the averments in the petition, taken in connection with the statement of January 1, 1907, were sufficient to warrant the court in awarding the mandamus. The petition does not have to aver facts sufficient to sustain a bill filed for an accounting. The stockholders of a corporation are the owners of its franchise and its assets and they have a right to be informed of the financial condition of the company. When, therefore, a stockholder furnishes sufficient data to warrant the conclusion that there is mismanagement and that the affairs of the company are not conducted in a proper manner and in the interests of the stockholders, he has a right to demand of the officers of the company permission to examine the books, records and accounts of the corporation so that he may protect his interests; and if the demand is refused and he makes application to the court to enforce it, a mandamus should be awarded. The facts averred in the relator's petition were sufficient to justify the court in granting the alternative writ, and subsequently in awarding the peremptory writ.

That the relator is a stockholder in a competing company is of itself not sufficient to deprive him of the relief he seeks in this proceeding against the defendant company. This has been distinctly ruled in Cobb v. Lagarde, 129 Ala. 488. It is there said (p. 495) : " The defendant set up in his answer that the petitioner's purpose in wanting to inspect the books was an improper one. This was defensive matter, and the burden was on the defendant to show it, and we are not prepared to say that he has done so. The fact of petitioner being a stockholder in a rival concern and that he may thereby gain some advantage by an inspection of the books of the defendant company, does not necessarily show an improper purpose in making demand for inspection, and will not deprive him as a stockholder of his right of investigation into the management of the affairs of the company." In the case at bar there is simply an averment, on belief, that the relator desires the information to use it for the advantage of a competing company. It is not alleged in the return that the averment can be supported by proof.

The offer of the defendant company to buy the relator's stock at a price fixed by it is no answer to his demand for an inspection of the books and papers of the corporation. He is not required to sell his stock to the defendant company or its officers at any price, and especially at a price to be named by them. In fact, it would be difficult for him to know what would be a fair and reasonable price for his stock until he gets the very information he demands in this proceeding. Nor is it an answer to the relator's application that the company will furnish him extracts or copies from its books, or that the company will agree to have them inspected by an expert selected by it and the relator. These propositions on the part of the company entirely overlook the rights of a stockholder in a trading corporation. As we have suggested, the stockholders are the owners of the company's assets, and for the protection of their interests they have a right to be informed of the management of its business. If, therefore, there is apparent mismanagement or misconduct by the officers of the corporation, a stockholder has a right to make an investigation for himself and ascertain the true condition of the company's affairs. Of course, this right to examine the books, records and papers of the company

must be exercised in good faith and at a proper time and place so as not to interfere with the business of the company. But subject to this limitation, the officers of the company must permit the stockholder to investigate the company's affairs, and if they fail to do so on a reasonable and proper demand, the court will, on proper application, enforce the demand by mandamus.

It is settled that at common law a stockholder of a trading corporation has a right to examine the books and papers of the company at a reasonable time and place, and for a proper purpose. In Commonwealth v. Phœnix Iron Company, 105 Pa. 111, it is held that a stockholder in a trading corporation, who is denied access to corporate records and information as to corporate affairs, may, in certain cases, have a mandamus to compel the production of such books and papers as are essential to him for some proper and definite purpose, such as an accurate ascertainment and legal assertion of his rights as a stockholder. In that case Justice TRUNKEY speaking for the court said (p. 116): " Unless the charter provides otherwise, a shareholder in a trading corporation has the right to inspect its books and papers and to take minutes from them, for a definite and proper purpose, at reasonable times. The doctrine of the law is, that the books and papers of the corporation, though of necessity kept in some one hand, are the common property of all the stockholders." When the same case was before this court again, 113 Pa. 563, it was said (p. 572): " Under the circumstances mentioned, and for the purposes stated, we are of the opinion that according to our ruling when the case was here before, the relator is clearly entitled to an examination of the books and papers of the company. Such a right is of course not to be exercised to gratify curiosity, or for speculative purposes, but in good faith and for a specific, honest purpose, and where there is a particular matter in dispute, involving and affecting seriously the rights of the relator as a stockholder. . . . A stockholder in a trading corporation must certainly have some rights which a board of directors should respect. Sellers (the relator) was not bound to accept the mere statement of the board, whether under oath or otherwise, as to the contents of the books, etc. He had a right to a reasonable personal inspection of them, and with the aid of a disinterested expert might make such extracts as were

reasonably required in the preparation of the bill he purposed to bring."

In Huylar v. Cragin Cattle Company, 40 N. J. Eq. 392, 398, it was said by Chancellor Runyon delivering the opinion (p. 398): " Stockholders are entitled to inspect the books of the company for proper purposes at proper times. Such a right is necessary to their protection. To say that they have the right, but that it can be enforced only when they have ascertained, in some way without the books, that their affairs have been mismanaged, or that their interests are in danger, is practically to deny the right in the majority of cases. Oftentimes frauds are discoverable only by examination of the books by an expert accountant. The books are not the private property of the directors or managers, but are the records of their transactions as the trustees for the stockholders."

In the case in hand, the petitioner avers that the information he seeks is necessary to enable him, as he purposes doing, to file a bill in equity against the company and its officers to restrain them from mismanaging the business of the company. The truth of this averment is apparent, and unless the petitioner secures the information, it is very doubtful whether he can maintain a bill against the defendant company and its officers. He has been denied all information as to the business of the corporation, and his only remedy is the one he invokes in this proceeding. It may be that when he examines the books and papers of the corporation he will be satisfied that the company's affairs have been properly conducted by the officers, but under the facts disclosed in his petition that is no reason for denying him an opportunity for examining the books and papers of the company so that he may satisfy himself of the condition of its affairs in order to protect his investment in the company. So far as the record discloses, the relator has presented sufficient facts in his petition to warrant his allegation of mismanagement, and he has, therefore, the right to examine the books and papers of the company. The mandamus was properly awarded.

The assignments of error are overruled and the judgment is affirmed.