Taylor *v.* Eden Cemetery Company et al.,
Appellants.

Argued November 27, 1939. Before KEPHART, C. J.,
SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Ralph S. Croskey,* of *Edwards & Croskey,* with him *Theodore L. Reimel,* for appellants.

*Francis R. Taylor,* with him *William K. Alsop, Jr.,* and *Taylor, Hoar & Nicholson,* for appellee.

OPINION BY MR. JUSTICE DREW, January 2, 1940.

Francis R. Taylor, succeeding trustee under the will of Nettie Lee Danenhauer, instituted this mandamus proceeding to compel the Eden Cemetery Company, its officers and trustees, to give plaintiff access to such of its corporate books as would enable him to ascertain, inter alia, the value of his interest in the defendant company, the assets of the company, the disposition made of the assets and the receipts during the preceding ten years, the prices obtained for cemetery lots and to whom they were sold, the nature of the outstanding indebtedness, the number of shares sold after the original issue, the consideration received, the names of the subscribers, and the salaries and bonuses paid to the officers and trustees of the company. The learned court below sustained plaintiff's demurrer to defendants' return, en-

tered judgment for plaintiff, and awarded a peremptory writ of mandamus. This appeal followed.

Plaintiff alleged that he is part owner of the company, holding, as trustee under the will, a two thousand shares interest in "one-half the proceeds of sale of use of lots," that being obliged to account to the Orphans' Court for the administration of his trust, he is desirous of determining the value of this investment in order to know whether to liquidate or retain it, and that defendants, the officers of the corporation, had refused his repeated requests for leave to examine such books as would disclose the true value of the shares. He also averred that he had been informed that the affairs of the company were being improperly conducted and that if an examination of the books disclosed irregularities and mismanagement, he proposed to file a bill in equity for relief.

In answer, defendants set forth that they do not object to furnishing plaintiff information concerning the sale of lots and the prices brought, but that they can see no reason for allowing him to examine generally the company books. They deny that an examination of the books will disclose any irregularities and insist that plaintiff's standing is at best only that of a contract creditor, who has been paid in full and who is therefore powerless to inquire into the condition of the company. They characterize plaintiff as being the owner of a one per cent fractional interest in one-half the *net* proceeds of the sale of lots and allege that from the time of the issuance of these shares to the incorporator, who was plaintiff's predecessor in title, up until 1938, the company has overpaid the various holders thereof to the extent of $538.88.

From the articles of incorporation of defendant company, made part of the petition by stipulation of counsel, it appears that the company had no right under its charter to issue capital stock, but that pursuant to its by-laws the trustees for the purpose of acquiring the

necessary land and to defray operating expenses, issued and sold certificates under the corporate seal and signed by the President and Treasurer for 161,866 share interests in one-half of the net proceeds from the sale of all lots. The by-laws provided that the owners of share interests should be entitled to one vote for each twenty-five shares owned at all meetings of the corporation and gave them a voice in the selection of the corporate management. Plaintiff's certificate representing two thousand of these share interests reads as follows:

"INCORPORATED UNDER THE LAWS OF THE STATE OF PENNSYLVANIA

"No. 1154          No. of Shares 200,000

"EDEN CEMETERY COMPANY

"—2000—Shares          Par Value $1.00

"THIS IS TO CERTIFY, That FRANCIS R. TAYLOR, Succeeding Trustee under the Will of Nettie Lee Danenhauer is entitled to Two Thousand Shares interest in one-half the proceeds of sale of use of lots in

"EDEN CEMETERY COMPANY

"THIS CERTIFICATE is transferable only upon the books of the Cemetery Corporation in person or by attorney on the surrender of this Certificate.

"IN WITNESS WHEREOF, the said EDEN CEMETERY COMPANY has caused this Certificate to be signed by its President and Treasurer at the City of Philadelphia, Pennsylvania, this —23rd— day of November, 1933.

"W. BASIL WEBB,
"Treasurer.

"J. C. ASBURY,
"President."

The marked similarity between these share interests and shares of capital stock is at once apparent. The incidents of the share interests which are commonly found in shares of capital stock are principally that the

certificates have the appearance of stock certificates and are as readily transferable, the share interests have a "par value" but are sold at varying prices, ownership of them confers voting privileges, they were issued to meet the general expenses of the corporation and to provide funds for the acquisition of corporate property, and the holder of a certificate shares in one-half the net proceeds of sales of corporate property in the proportion which his number of shares bears to the total issued, rather than in proportion to the amount of money he has invested.

Since defendant company was not empowered to issue capital stock, plaintiff admittedly was not a full-fledged shareholder: See *Cooke v. Marshall,* 191 Pa. 315, 320. However, the incidents of ownership of the share interests so closely resemble those attaching to ownership of capital stock that plaintiff's status should be considered akin to that of a shareholder in determining his right to inspect the company books. Whether he be termed a "shareholder" or a "member" or an "owner," he certainly has a special interest in the corporation and the right to inspect its records for a proper purpose. It is well settled that a shareholder has such right, and that mandamus is the appropriate remedy to enforce that right where it is denied by the corporation. In *Hodder v. George Hogg Co.,* 223 Pa. 196, 198, we said: "Relator as a stockholder has without question the right to inspect the books of the company, at a proper time, and in a proper way, even though his only object be to ascertain whether the business has been properly conducted. Such a right is necessary for the protection of stockholders." The books and papers of a corporation are the common property of all the stockholders: *Kuhbach v. Irving Cut Glass Co.,* 220 Pa. 427.

The Mandamus Act of June 8, 1893, P. L. 345, sections 1 and 3, provide that mandamus may issue to corporations "upon the application of any person beneficially interested." It is plain that one who has the

right to inspect the books of a corporation is a "person beneficially interested." All of this is admitted by defendants. Their sole contention is, in effect, that plaintiff is not a shareholder and hence has no right to examine the books. But even if plaintiff is not a shareholder, he is not precluded from the remedy which he seeks. Others beside shareholders are entitled thereto. In *McClintock v. Young Republicans of Philadelphia,* 210 Pa. 115, a peremptory writ of mandamus was directed to defendant club to inspect the list of members. The record in the court below discloses no mention of stock, nor that plaintiff claimed to be a shareholder. This Court referred to plaintiff as a "member," and held that he had the same right as the officers to have access to the rolls of the association in order to help effectuate its objects. Again, in *Williamsport v. Citizens' Water & Gas Co.,* 232 Pa. 232, it was held that a city, which contemplated purchasing defendant corporation's water works, under the terms of an enabling statute, had the right to inspect the books of the corporation, and that the appropriate remedy to enforce that right was by writ of mandamus rather than by a bill in equity. The court pointed out that plaintiff, like a stockholder who desired to be placed in a position to assert his legal rights in an action which he proposed to bring against the corporation, was one "with a special interest, desiring information contained in books, papers and records, so as to be in a position to assert a legal right in or to the property of a corporation."

It is quite clear, therefore, that the owner of an interest such as that of plaintiff is a member of defendant corporation and is "beneficially interested," in the sense in which that term is employed in the Mandamus Act and that a legitimate interest of his will be served by granting the relief prayed. He is vitally concerned with the salaries paid the officers and trustees: See *Bailey v. Boxboard Products Co.,* 314 Pa. 45. Exorbitant salaries would necessarily and unfairly result in a

decrease of *net* proceeds. Since the return from the initial investment in the share interests is directly proportionate to the *net* proceeds derived from the sale of lots, it is manifest that plaintiff is deeply interested in whether or not the salaries paid are excessive. It is equally apparent that plaintiff in good faith desires an inspection of the company books for a definite and proper purpose affecting his right as owner of share interests. He states he must determine the value of the investment in order to account to the Orphans' Court of Philadelphia. In addition, he avers and believes that the affairs of the corporation are not being properly managed; that the books of account are incomplete and incorrect, and that if an examination discloses irregularities and mismanagement, he intends to file a bill in equity for the appointment of a receiver or for "such other relief as the necessities of the case may require." These purposes are adequate and reasonable, and show that he is entitled to the examination he seeks to see whether there is ground for an action: *Com. ex rel. Sellers v. Phœnix Iron Co.*, 105 Pa. 111; *Phœnix Iron Co. v. Com.*, 113 Pa. 563; *Kuhbach v. Irving Cut Glass Co.*, supra; *Hodder v. George Hogg Co.*, supra.

Judgment affirmed; appellants to pay costs.