# Wolfington v. Wolfington Body Co.

*Gilda L. Kramer,* for plaintiff.
*John J. Higson,* for defendant.

HERRON, *J.,* August 8, 2000—This opinion discusses the accountant-client privilege in conjunction with and support of this court's ruling at the discovery hearing held on July 31, 2000, in which this court found that certain documents should be produced.

The underlying dispute concerns the value of the plaintiff's shares of the defendant companies, shares which the companies will buy back pursuant to buy-sell agreements, and the alleged mismanagement of the companies which could have affected the value of these shares.

At the aforementioned discovery hearing this court was confronted with plaintiff's motion to compel production of accountants' documents and compliance with a subpoena directed to the defendants' accountants, along with defendants' memorandum of law in opposition thereto. The issue presented was whether the accountant-client privilege attached to the subpoenaed records such that it barred production of these records.

For the reasons which follow, this court concluded that the accountant-client privilege did not attach to the sub-

poenaed records directed to the defendants' accountants, but this court limited the plaintiff's requests under the subpoena to those documents in the accountants' possession and those which pertain to the preparation of financial statements.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Patricia C. Wolfington, executor of the estate of her late husband, Robert Wolfington, succeeded to her husband's interests as shareholder of approximately 20 percent of the defendant companies, at the time of her husband's death on November 17, 1998. The defendant companies, Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc. and Eagle Wolfington Leasing Corporation, are three interrelated family-owned companies with no more than six shareholders.

Pursuant to buy-sell agreements that were executed in 1968, the shareholders (including Robert Wolfington) agreed that the corporation(s) would buy back the shares of stock at the time of the respective stockholder's death. The agreements provided in pertinent part:

"(3) The price to be paid for the said stock shall be the book value of the said stock as of December 31 preceding the dates of their respective demise.

"(4) The payment of the stock to be sold and purchased is to be agreed upon as soon after the death of the stockholder as conveniently may be and not to exceed a period of 10 months from the date of death. The purchase price agreed upon shall be paid on an installment basis beginning two years after date of death, in monthly installments over a period of 15 years from that date with interest computed annually . . . .

"(5) This agreement shall bind and obligate and shall enure to the benefit of the heirs, executors and administrators of the respective parties hereto." Pl. exhibits D and E, attached to motion for mandamus.

Pursuant to these agreements, defendants approached the plaintiff to agree on a value for her shares of the defendants' companies. In turn, plaintiff sought to independently calculate the value of her shares and had allegedly made repeated attempts to obtain various documents in order to assess the value and to determine whether the companies were properly managed, but she was unsuccessful.

Then, on February 29, 2000, plaintiff filed an action in mandamus to compel defendants to permit her to inspect certain documents[1] of the defendant companies pursuant to 15 Pa.C.S. §1508.[2] On March 24, 2000, plaintiff filed her original motion for peremptory judgment of mandamus. Defendants filed their answer on April 24,

---

1. The documents requested included the following: articles of incorporation, bylaws, corporate minutes from 1965 to present, share registers, full and complete financial statements from 1994 to present, W-2 forms and 1099 forms from 1994 to present, federal and state tax returns, life insurance policies for officers and shareholders, fixed asset and depreciation schedules from 1994 to present, executive employment and compensation agreements from 1994 to present, payroll records from 1994 to present, all shareholder agreements, all of the company's accountants' work papers from 1994 to present, and documents removed from her husband's office. See exhibit A, attached to complaint and motion for mandamus.

2. Plaintiff has also commenced a shareholder derivative action involving the same parties, which is docketed at February term 2000, no. 3421, and has asserted related direct claims and breach of contract claims in a consolidated action, which is docketed at February term 2000, no. 3419.

2000. On May 1, 2000 this court held a discovery hearing on this motion. After this hearing, this court entered a stipulated order dated May 11, 2000 which compelled the defendants to produce various documents and information that the plaintiff had requested. See stipulated order, attached at pl. exhibit A to motion to compel.[3] In the last paragraph of the stipulated order, the court noted that it would "defer, at this time, ruling of plaintiff's request number 16, for all of the companies' accountants' work papers from 1994 to present." *Id.* at 3.

Defendants have produced many documents in compliance with this court's order, but have still not provided the accountants' work papers or the documents in the accountants' possession, insisting that the documents are protected by the accountant-client privilege and would duplicate information that defendants had already provided. The defendants' accountants are Narcisi & Co. On June 5, 2000, plaintiff served a subpoena on Narcisi & Co., as custodian of the requested records, in order to compel them to produce a variety of documents. See pl. exhibit D and def. exhibit C, respectively.

By letter dated June 7, 2000, counsel for defendants advised Narcisi & Co. that the subpoenaed documents are protected by the accountant-client privilege and instructed them not to provide these documents. See pl. exhibit E. On the same date, Narcisi & Co. sent a letter to plaintiff's counsel, advising that they cannot produce

---

3. The stipulated order is also attached at def. exhibit A. Unless otherwise designated, the exhibits referenced to in this opinion are those exhibits which are attached to the plaintiff's motion to compel and/or the defendants' memorandum in opposition thereto.

the documents due to the defendants' assertion of privilege and that the subpoena is overbroad. See pl. exhibit F.

On July 31, 2000, a discovery hearing was held in which plaintiff presented her motion to compel and defendants presented her memorandum in opposition thereto. Upon review of the subpoena and the parties' respective memoranda, this court made the following rulings:

"(1) The requests for records contained in the subpoena's paragraphs (A), (B) and (J), respectively are Denied where plaintiff did not sufficiently articulate her entitlement to these requests and/or how these documents affected the value of her shares.

"Paragraph A requested the following:

"All documents which relate, record or describe any and all engagements undertaken by Narcisi & Co. for, on behalf of, or at the request or direction of Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders.

"Paragraph B requested the following:

"All documents which relate, record or describe the nature of services performed by Narcisi & Co. for, on behalf of, or at the request or direction of Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders.

"and paragraph J requested the following:

"All documents relating to any U.S. government contracts or solicitations received by Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders including compliance audits, cost and price analyses, indirect cost analyses, overhead pool analyses, pre-award correspondence and analyses and post award correspondence and analyses.

"(2) Paragraphs (C) and (F) of the subpoena are Denied because the accountants do not have these documents.

"Paragraph C requested the following:

"All documents which relate, record or describe any communications, whether oral or written, formal or informal, involving Narcisi & Co. for, on behalf of, or at the request or direction of Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders.

"and paragraph F requested the following:

"All documents which relate to, record or describe any management consulting services or advisory services provided to Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders including engagement letters, planning memoranda, working papers, adjusting entries, confirmation requests, client representation letters, attorney letters, financial statements, draft reports, management letters, file notes, internal review checklists, and reports (draft or final) issued in connection with

any services performed for, on behalf of, or at the request or direction of Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders.

"(3) Paragraph D of the subpoena is Granted in part and Denied in part. Paragraph D requested the following:

"All internal memoranda, work papers or *working papers, bulk files, permanent files,* schedules, spreadsheets, financial statements, books, business records, financial records and audit papers which relate or refer to Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders."

The emphasized wording in the above-listed paragraph represents that portion of plaintiff's request which this court denied.

"(4) Paragraph E of the subpoena is Granted in part and Denied and/or Modified in part. The original paragraph E requested the following:

"All documents which relate to, record or describe the compilation, review, audit or preparation of financial statements of/for Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders, including engagement letters, *planning memoranda, internal control studies,* working papers, trial balances, adjusting entries, confirmation requests, client representation letters, attorney letters, financial statements, *draft reports,*

*management letters,* file notes, *correspondence and internal review checklists."*

The boldfaced wording represents that portion of plaintiff's request which this court denied and the italicized wording represents that portion which this court modified. Paragraph E, as modified by the court, is to read as follows:

"All documents which relate to, record or describe title compilation, review, audit or preparation of financial statements of/for Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders, including planning memoranda for preparation of financial statements, internal control studies related to financial statements, trial balances, adjusting entries, financial statements, draft financial reports, management letters referring to financial statements to or from management, correspondence related to the preparation of financial statements and internal review checklists for the preparation of financial statements.

"(5) The requests in paragraphs (G) and (H) of the subpoena were withdrawn without prejudice to raise later.

"Paragraph G requested the following:

"Documents which relate or refer to Narcisi & Co. policies regarding the retention of audit working paper files, correspondence, management consulting working paper files and advisory services files.

"Paragraph H requested the following:

"All documents which relate to, record or otherwise describe the compensation received by Narcisi & Co. from Wolfington Body Company Inc., Wolfington Au-

tomotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders for services performed on behalf of any party.

"(6) Paragraph (I) of the subpoena was Granted but limited to IRS audits only and without prejudice to raise additional requests later.

"Paragraph I requested the following:

"All documents relating to audits, inquiries or other procedures performed by any agency or representative of the U.S. government (*i.e.,* DCAA, IRS, SEC, GAO, EPA) which relate to the operations or activities of Wolfington Body Company Inc., Wolfington Automotive Leasing Company Inc., or Eagle Wolfington Leasing Corporation, their subsidiaries, affiliates, agents, employees and/or shareholders."

The parties agreed to draft a stipulated confidentiality agreement to cover any documents provided, pursuant to this court's ruling.

## DISCUSSION

In support of their motion to compel production of the accountants' documents, plaintiff contended (1) that the accountant-client privilege is not applicable because the request of these documents was made pursuant to 15 Pa.C.S. §1508 and plaintiff can be considered the "client" as a substantial shareholder; (2) that defendants have waived the privilege by demanding that plaintiff sell back her shares based on values in the accountants' summary financial statements; or (3) that there is good cause not

to invoke the privilege. See motion to compel at 6-11. In turn, defendants asserted (1) that only the current management has the right to waive the accountant-client privilege and they have not done so; (2) that the plaintiff is merely on a "fishing expedition" and has not shown good cause to waive the privilege; and (3) that plaintiff's request is overbroad and cumulative. See def. memorandum at 9-12.

This court determined that the accountant-client privilege did not apply to the subpoenaed records and that plaintiff demonstrated good cause not to invoke the privilege in the circumstances of the present case.

Under the C.P.A. Law, codified at 63 P.S. §1 et seq., this court determined that the plaintiff has a basis for the relief she seeks. Specifically, section 9.11 of 63 P.S. requires the accountant to furnish his client or former client, upon request, "all statements, records, schedules, working papers and memoranda prepared by an [accountant]," as well as copies of his working papers that "would ordinarily constitute part of the client's records and are not otherwise available to the client" and "any accounting or other records belonging to, or obtained from or on behalf of, the client that the [accountant] removed from client's premises or received for the client's account." *Id.* at section 9.11. At first glance, it appears that some of the information sought in the plaintiff's subpoena would fit under this provision and must be provided to the client or former client upon his request. Nonetheless, the statute does not define who is the "client" for purposes of the privilege or for determining who may waive the privilege.

Section 9.11a of 63 P.S., which creates by statute the accountant-client privilege, sheds some light on this issue. It provides in pertinent part that:

"Except by permission of the client engaging him or *the heirs, successors or personal representatives of a client,* a licensee or a person employed by a licensee shall not be required to, and shall not voluntarily, disclose or divulge information of which he may have become possessed unless the sharing of confidential information is within the peer review process. . . ." *Id.* (emphasis added)

The statute also explicitly excludes "information required to be disclosed by the standards of the profession in reporting on the examination of financial statements, or in making disclosures in a court of law or in disciplinary investigations or proceedings when the professional services of the certified public accountant, public accountant or firm are at issue in an action . . . ." *Id.*[4]

The accountant-client privilege in Pennsylvania did not exist at common law and there are few Pennsylvania cases which address it. As stated by the Pennsylvania Superior Court, "[t]he relationship between an accountant and his client has been held to be one of confidentiality . . . ; however, the statute makes only a limited change in the common law, and it does not extend the common-

---

4. An earlier version of this statute explicitly excluded "the examination of audit of or report on any financial statements, books, records or accounts, which [the accountant] may be engaged to make or requested by a prospective client to discuss." *United States v. Bowman,* 358 F.2d 421, 422-23 (3d Cir. 1966) (holding that accountant was not entitled to refuse to comply with summons specifically requesting information excluded from the privilege statute).

law attorney-client privilege to the accountant-client relationships." *Agra Enterprises Inc. v. Brunozzi,* 302 Pa. Super. 166, 171, 448 A.2d 579, 582 (1982) (citations omitted) (holding that former accountant did not betray type of confidence protected by the accountant-client privilege). See also, *Bowman,* 358 F.2d at 423 (stating that "[s]ince the statute is in derogation of the common law which does not accord an accountant-client privilege, the privilege which it accords must be strictly construed."). Further, the right to grant or withhold permission to speak, lies with the client, not the accountant. *Id.* at 171 n.1, 448 A.2d at 582 n.1.

In discussing the privilege, the federal courts have given it a narrow interpretation and have refused to apply it in certain situations. For example, in *Detroit Coke Corporation v. NKK Chemical USA Inc.,* 1993 WL 367060 at *1 (W.D.N.Y.), the court granted the defendant's motion for an order directing plaintiff's accountants to comply with a subpoena. The *Detroit* court stated that "[t]he accountant-client privilege is designed to encourage full divulgence to the accountant; it should not be used offensively to prevent a sued party's access to relevant and potentially vital information in challenging claims made against such party by the accountant's client." *Id.* at *2. In *Emtec Inc. v. Condor Technology Solutions Inc,* 1998 WL 242603 at **2-3 (E.D.Pa.), the court held that Pennsylvania's accountant-client privilege did not bar discovery of documents from the accountant's audit of plaintiff where the information sought was relevant to defendants' affirmative defenses in a breach of contract case. The court reasoned that "the client may waive the accountant-client privilege through

conduct inconsistent with its assertion." *Id.* at \*2. Likewise, in *Samson Refining Co. v. Bache Halsey Stuart Shields Inc.,* 92 F.R.D. 440, 441 (E.D.Pa. 1981), the court stated the following:

"When the client commences a lawsuit the allegations of which make relevant information and knowledge in the possession of the accountant and when the information or knowledge would be discoverable from the client if it was in his possession, then the client should be deemed to have waived the privilege by initiating the suit. The privilege could not have been intended to cloak material that would be discoverable from the client if it was in the client's possession." *Id.* at 441. See also, *In re Oxford Royal Mushroom Products Inc.,* 41 B.R. 863, 864-65 (E.D.Pa. 1984) (holding that trustee was entitled to financial records to establish the size of the debtor's bankruptcy estate and that Pennsylvania's accountant-client privilege did not apply in bankruptcy).

Moreover, it is well-settled that stockholders are the owners of the company's assets, and, therefore have a right to examine the corporate books, records, papers and accounts in order to determine if any alleged mismanagement occurred or to set a proper valuation on the shares of stock. *Taylor v. Eden Cemetery Co.,* 337 Pa. 203, 208-209, 10 A.2d 573, 575-76 (1940) (holding that estate's trustee has standing to bring mandamus action to examine corporate books in order to assess the value of his interest and to determine if the corporation is being mismanaged); *Kuhbach v. Irving Cut Glass Co.,* 220 Pa. 427, 433, 69 A. 981, 983-84 (1908) (stockholder may examine corporate books to see if corporation is being mismanaged); *Zerbey v. J.H. Zerbey Newspapers Inc.,*

385 Pa. Super. 109, 119-20, 560 A.2d 191, 196 (1989) (same). See also, *Friedman v. Altoona Pipe and Steel Supply Co. Inc.,* 460 F.2d 1212, 1213-14 (3d Cir. 1972) (holding that plaintiff has stated a proper purpose to inspect corporate books in order to determine the value of her shares or see if mismanagement occurred, and summaries of financial information are not sufficient under the Pennsylvania statute).

Here, under the plain meaning of section 9.11a of the C.P.A. Law, the plaintiff should qualify as the "heirs, successors or personal representatives of a client," and thus, would be entitled to waive the privilege for purposes of this mandamus action. Plaintiff argued that Robert Wolfington, as an officer and director of each company until his death, was authorized to act on its behalf, and can be considered the "client" for purposes of the privilege with regards to the information provided to the accountants through 1998. Pl. motion to compel at 7. In turn, the defendants asserted that only the current management of the corporation, as those authorized to act on its behalf, hold the power to waive the privilege. Def. memorandum at 9. They relied on *Maleski v. Corporate Life Insurance Co.,* 163 Pa. Commw. 36, 641 A.2d 1 (1994). That case addressed the attorney-client privilege and held that the statutory liquidator, as the management successor to the corporation, may waive the privilege with respect to confidential pre-liquidation communications. *Id.* at 43, 641 A.2d at 4.

This court is not persuaded by defendants' argument since the accountant-client privilege is not as broad as the attorney-client privilege. See *Agra,* 302 Pa. Super. at 171, 448 A.2d at 582. Further, plaintiff, as the estate of

Robert Wolfington, steps into his shoes and he would have had access to the information sought now by the plaintiff. At the discovery hearing on May 1, 2000, defendants conceded that the plaintiff was considered a "shareholder" for the purpose of the motion of mandamus. Plaintiff seeks various financial records from the accountants in order to determine the true value of her shares. The accountant work papers, as related to the preparation of financial statements, could have direct bearing on determining the book value of the stock, which is the key issue in dispute. Therefore, despite the fact that the plaintiff initiated the present litigation, the accountant-client privilege should not now be invoked to bar access to information which is relevant and vital to the plaintiff's mandamus action and to which she is entitled.

In addition, this court agrees with the plaintiff that the seminal case of *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir. 1970) has relevance in deciding the applicability of the privilege. In that case, Court of Appeals for the Fifth Circuit held that in a suit by shareholders, alleging corporate mismanagement, the attorney-client privilege is "subject to the right of stockholders to show cause why it should not be invoked in the particular instance." 430 F.2d at 1103-1104. In determining whether the privilege applies, the *Garner* court listed the following factors to consider: "(1) the number of shareholders and the percentage of stock they represent; (2) the bona fides of the shareholders; (3) the nature of the shareholders' claim and whether it is obviously colorable; (4) the apparent necessity or desirability of the shareholders having the

information and the availability of it from other sources; (5) whether, if the shareholders' claim is of wrongful action of the corporation; (6) whether the communication related to past or to prospective actions; (7) whether the communication is of advice concerning the litigation itself; (8) the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; and (9) the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest from independent reasons." *Id.* at 1104.

This standard has been adopted in the context of the accountant-client privilege. *Neusteter v. The District Court,* 675 P.2d 1, 5-7 (Colo. 1984) (holding that accountant-client privilege did not apply where the minority shareholders of two companies alleged corporate mismanagement of assets and the dispute is between the control group and minority group in a closely held corporation). See also, *Fochetta v. Schlackman,* 685 N.Y.S.2d 22, 257 A.D.2d 546 (1999) (holding that attorney-client privilege did not apply to deny plaintiff access to materials essential to prove plaintiff's claims in a disputed stock surrender case in which plaintiff is a 50 percent shareholder of closely held corporations).

Applying the *Garner* factors here, there is good cause not to invoke the accountant-client privilege. It is undisputed that the defendant companies are closely held corporations and have only six shareholders. The plaintiff owns approximately 20 percent of each company. Plaintiff has alleged that there may have been "serious mismanagement, appropriation of corporate assets or funds

for personal use, and diversion of corporate opportunities by Richard Wolfington and others from the companies, which would affect the value of Robert Wolfington's shares." Motion for mandamus at ¶15. Further, plaintiff has filed a shareholder derivative action, based upon alleged breaches of fiduciary duties and mismanagement. As noted above, the value of the companies is a key issue in the present dispute and the requested accountant work papers could be necessary to better assess the true value. In addition, the parties agreed to draft a stipulated confidentiality agreement, which could inoculate any risk of revelation of confidential and/or secret information from the general public.

Nonetheless, this court limited the plaintiff's requests for the accountants' work papers to the extent that specific documents were described and to those which related to the preparation of financial statements and to IRS audits. This court denied any requests for documents that were ambiguous, or that the accountants did not have. By doing so, this court tailored any alleged "fishing" expedition on the plaintiff's part while still granting her access to information which should not be barred by the accountant-client privilege.

## CONCLUSION

For the reasons set forth above, this court concluded that the accountant-client privilege did not attach to the subpoenaed records directed to the defendants' accountants, Narcisi & Co. In accordance with this rationale, it granted some of the plaintiff's requests, but modified those requests in order to reach the most pertinent information.

## ORDER

And now, August 8, 2000, upon consideration of plaintiff's motion to compel production of accountants' documents and compliance with subpoena, defendants' response thereto, after a discovery hearing held on July 31, 2000, in accordance with the record findings made at that hearing, and in conjunction with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered that the plaintiff's motion is granted in part, modified in part, and denied in part.