## Southeastern Pennsylvania Transportation Authority v.
## Philadelphia Transportation Company

*William T. Coleman, Jr.,* and *Lewis H. Van Dusen, Jr.,* for plaintiff.

*Ernest R. von Starck,* for defendant.

SPAETH, J., October 26, 1965.—

## I. NATURE OF THE CASE

Plaintiff, Southeastern Pennsylvania Transportation Authority (SEPTA), has filed a complaint in mandamus that asks the court to command defendants, Philadelphia Transportation Company and its subsidiaries (PTC), to permit an accounting firm retained by SEPTA to make an audit of PTC's books and records, and to permit an engineering firm retained by SEPTA to inspect PTC's property and property records. Defendants have filed preliminary objections in the form of a motion to strike and a demurrer.

## II. THE FACTS

The facts appear from the complaint, admitted by the demurrer to be true: Dumont Television and Radio Corporation v. Franklin Electric Co. of Phila., 397 Pa. 274, 276 (1959). Only certain of them need be stated.

On July 1, 1907, the City of Philadelphia and the Philadelphia Rapid Transit Company (PTC's predecessor) entered into an agreement, subsequently amended several times, that provides, in paragraph eleventh, that:

"The City reserves the right to purchase all the property, leaseholds and francises of the Company and its wholly-owned subsidiaries upon any first day of July hereafter, by serving six months' notice. . . . The right of the City to purchase . . . shall be assignable. . . ."

The Metropolitan Transportation Authorities Act of August 14, 1963, P. L. 984, 66 PS §2001, et seq., provided for an authority with power to acquire and operate a transportation system such as PTC's: 66 PS §§2004(d)(6), 2005 and 2006. SEPTA was created under this act by certificate of incorporation issued on February 17, 1964.

On June 8, 1965, the city assigned to SEPTA the

city's right, under the 1907 agreement, to buy the PTC system, and SEPTA gave PTC notice that it intended to exercise the right on July 1, 1966.

Section 10 of the Act of August 14, 1963, provides that ". . . for the purpose of acquiring any transportation system . . .", SEPTA ". . . may . . . issue and dispose of its interest-bearing bonds . . . [which] shall be payable solely from the revenues or income to be derived from the transportation system. . . .": 66 PS §2010(a).

To sell such bonds, SEPTA must issue a circular containing detailed financial statements and an engineering feasibility report on whether the projected revenues of the PTC system will be sufficient to service the bonds. To be acceptable, the statements and report must be by nationally recognized, independent firms. SEPTA has engaged such firms, but they cannot prepare the statements for the circular because PTC will not permit them to inspect its records or property.

After trying from January 1 to August 17, 1965, to inspect the records and property, SEPTA, on August 31st, filed this complaint in mandamus. On September 17th, PTC filed preliminary objections. Argument was heard on October 8th.

### III.  DISCUSSION

PTC's preliminary objections are a motion to strike and a demurrer.

### A.  THE MOTION TO STRIKE

Pennsylvania Rule of Civil Procedure 1017(b)(2), which by rule 1091 is made applicable to a mandamus action, provides that a motion to strike is available ". . . because of lack of conformity to law or rule of court or because of scandalous or impertinent matter". PTC's motion makes no reference to any law or rule; it states only that the averment in paragraph 18 of the complaint, that the city supports SEPTA's prayer,

is "clearly irrelevant and immaterial". However, a motion to strike should be overruled unless a party can affirmatively show prejudice: Rodman v. Nelley, 51 D. & C. 242, 245 (C.P. Dauphin Co., 1943). Further, the right to strike impertinent matter should be sparingly exercised: Alwine v. Erb, 11 D. & C. 2d 279, 283 (C.P. Dauphin Co., 1955). And where matter is impertinent but not injurious, it need not be stricken: Barndt v. Senese, 69 Montg. 31 (1952).

There is no way to be certain now whether the interest of the city is relevant, and PTC neither alleges, nor is it apparent that there is, any prejudice to it from paragraph 18 in the complaint. The motion to strike the paragraph will, therefore, be dismissed.

## B. THE DEMURRER

### 1. *The pertinent statute.*

". . . in Pennsylvania mandamus actions are governed solely by the Act of 1893, P. L. 345, as amended, (12 PS §1911 et seq.), and as the same has been modified by Pa. R. C. P. 1091 through 1098": Butcher v. Philadelphia Civil Service Commission, 163 Pa. Superior Ct. 343, 346 (1948).

Section 1 of the Act of June 8, 1893, P. L. 345, provides that "The several courts of common pleas shall, within their respective counties, have the power to issue writs of mandamus . . . to all corporations being or having their chief place of business within such county. . . .": 12 PS §1911. Section 2 of the act provides that "If . . . [the] petition presents the substance of a case for mandamus, the court shall direct that such writ issue in the alternative form. . . .": 12 PS §1912. And section 3 provides that "The writ of mandamus may issue upon the application of any person beneficially interested": 12 PS §1913.

So far as practice and procedure are concerned, these sections have been modified by the procedural rules. For example, the "petition" is now the "complaint";

and instead of raising the issues in an answer or return to the alternative writ (see Williamsport v. Citizens' Water & Gas Company, 232 Pa. 232, 246-49 (1911)), defendant pleads as in assumpsit: Pa. R. C. P. 1091. But "The Procedural Rules effect no change in the scope of the action of mandamus": Strank v. Mercy Hospital of Johnstown, 376 Pa. 305, 309 (n. 2) (1954); Goodrich-Am. §1091-1; 3 Anderson Pa. Civ. Prac. §1091.1. Nor, indeed, did the act, for "Section 3 is declaratory of the prior law on the subject": Davidson v. Beaver Falls Council, 348 Pa. 207, 210 (1943).

Therefore, the question is whether the complaint "presents the substance of a case" within the Act of 1893, as illuminated by prior law.

## 2. *The origin of the right to mandamus.*

"Mandamus had its origin in England in the control assumed by the King's judges over the autonomous organs of local government, usually to remedy the loss of some position or office": Rapp v. Van Dusen, 350 F. 2d 806, 811. In 1615, Sir Edward Coke said "that to this Court of King's Bench belongs authority, not only to correct errors in judicial proceedings, but other errors and misdemeanors extrajudicial, tending to the breach of peace, or oppression of the subjects . . . ; so that no wrong or injury, either public or private, can be done but that it shall be (here) reformed or punished by due course of law": Bagg's Case, 11 Co. Rep. 93b, 98a, 77 Eng. Rep. 1271, 1277-78 (1615), cited and quoted in Rapp v. Van Dusen, supra, footnote 13; although see Lord Ellesmere's "observation" on Coke's claim, footnote (B), 77 Eng. Rep. 1278. And in Rex v. Barker, 3 Burr. 1265, 1267-68, 97 Eng. Rep. 823, 824-25 (1762), holding that an endowed pastor of Protestant Dissenters was entitled to mandamus directed to trustees, requiring the trustees to permit the pastor to use the pulpit, Lord Mansfield said that "It [mandamus] was introduced, to prevent disorder from

a failure of justice, and defect of police. Therefore it ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one".

In Rex v. Askew, 4 Burr. 2186, 98 Eng. Rep. 139 (1768), the question was whether mandamus should issue to the College or Community of the Faculty of Physic of the City of London to admit one Dr. Letch. In the course of his decision, Lord Mansfield said:

"The counsel for the college have admitted the jurisdiction of this Court: and they certainly have jurisdiction over corporate bodies, to see that they act agreeably to the end of their institution.

"There is no doubt that where a party, who has a right, has no other specific legal remedy, the Court will assist him by issuing this prerogative writ in order to his obtaining such right".

With various procedural changes, the English law was adopted in this country. See Williamsport v. Citizens' Water & Gas Company, supra, 232 Pa., at 244-45. Cf. Union Pacific Railroad Company v. Hall, 91 U. S. 343, 354 (1875), where the court said that "Tapping on Mandamus, p. 28, asserts the rule in that country [England] to be, that, 'in general, all those who are legally capable of bringing an action are also equally capable of applying to the Court of King's Bench for the writ of mandamus'. This is true in all cases, it is believed, where the defendant owes a duty, in the performance of which the prosecutor has a peculiar interest. . ."

And in Loraine v. Pittsburgh, Johnstown, Ebensburg & Eastern Railroad Company, 205 Pa. 132, 136 (1963),[1] it was said:

". . . the 3d section [of the Act of 1893], that [man-

---

[1] Referred to in Butcher v. Philadelphia Civil Service Commission, supra, as "[o]ne of the careful statements": 163 Pa. Superior Ct., at page 347.

damus] shall issue on the application of any person beneficially interested . . . save[s] to each person the right existing before the act, to sue out the writ when he seeks to protect an interest, special to himself as distinct from the general public".

Does SEPTA's complaint show so special an interest?

### 3. *When mandamus to examine corporate books will issue.*

The interest of a stockholder is sufficiently special within the principles established by the foregoing authorities to entitle the stockholder to examine the books of the corporation in which he owns stock: Kuhbach v. Irving Cut Glass Company, 220 Pa. 427, 433-34 (1908); Hodder v. George Hogg Company, 223 Pa. 196, 198 (1909) ; and see Annotation, Stockholder's or Officer's right to inspect books and records of corporation, 174 A. L. R. 262 et seq. (1948).

The principles of these decisions have been applied to permit someone who is not a stockholder to examine the corporate books, if his interest is sufficiently like a stockholder's interest.

Thus, in Williamsport v. Citizens' Water & Gas Company, supra, plaintiff city was held entitled to mandamus to compel defendant corporation to disclose its books. The Act of April 29, 1874, P. L. 73, provided that "It shall be lawful . . . for the . . . city . . . to become the owners [sic] of . . . the property of said company, by paying therefor the net cost of erecting and maintaining the same. . . ." Said the Court, by Mr. Justice Moschzisker:

"Mandamus is the ordinary and appropriate remedy to compel corporations to disclose information such as the plaintiff claims to be entitled to: Com. ex rel. v. Phoenix Iron Co., 105 Pa. 111; Phoenix Iron Co. v. Com. ex rel., 113 Pa. 563; Neubert v. Armstrong Water Co., 211 Pa. 582. In each of these cases the appli-

cation was by one claiming the right to inspect books and papers so that he might secure accurate knowledge of the affairs of a corporation; the plaintiff had the interest of a stockholder who desired to be placed in a position to assert his legal rights in an action which he proposed to bring against the corporation. In the present case the plaintiff has the interest of one possessed of a prima facie right under the act of 1874 to acquire the property of the defendant, which right it desires to be placed in a position to assert in an action proposed to be brought against the corporation. In common they are instances of a plaintiff with a special interest, desiring information contained in books, papers and records, so as to be in a position to assert a legal right in or to the property of a corporation, and there is no apparent reason why the same remedy should not apply here as in the cases cited": 232 Pa., at pages 243-44.

See also New Cumberland Borough v. The Riverton Consolidated Water Company and Mountain Water Company, 232 Pa. 525 (1911). There, plaintiff borough also had the right, under the Act of 1874, to buy defendant company, and sought mandamus to compel the company to exhibit its books. The Act of 1874 gave the borough the right to buy ". . . at any time after twenty years from the introduction of water . . . into [the borough] . . .", but the borough wished to buy at the end of 10 years. It relied upon an ordinance that had given the water franchise to one H. M. Horner, on condition that the borough ". . . shall have the option before all other persons . . . to purchase the . . . plant of the said H. M. Horner at the end of ten . . . years. . . ." Horner had assigned his rights to defendant water company. The lower court held that the ordinance gave the borough only a right of first refusal. The Supreme Court, however, held that it meant "that the borough shall have the right to acquire

the water plant upon the terms provided in the act of 1874 . . . at any time after ten years, instead of 'at any time after twenty years' as fixed in the statute" (232 Pa., at page 529) ; that "presumably" the water company was "subject to and bound by . . . the ordinance" (232 Pa., at page 530) ; but that it was unnecessary to decide the point, "for whatever [the ordinance's] effect may be . . . the proper . . . remedy was at common law by mandamus": 232 Pa., at page 530, citing and following the Williamsport case, supra.

Finally, in Taylor v. Eden Cemetery Company, 337 Pa. 203, 207-08 (1940), it was said:

"Since defendant company was not empowered to issue capital stock, plaintiff admittedly was not a full-fledged shareholder: See Cooke v. Marshall, 191 Pa. 315, 320. However, the incidents of ownership of the share interests so closely resemble those attaching to ownership of capital stock that plaintiff's status should be considered akin to that of a shareholder in determining his right to inspect the company books. . . .

"The Mandamus Act of June 8, 1893, P. L. 345, sections 1 and 3, provide that mandamus may issue to corporations 'upon the application of any person beneficially interested.' It is plain that one who has the right to inspect the books of a corporation is a 'person beneficially interested.' All of this is admitted by defendants. Their sole contention is, in effect, that plaintiff is not a shareholder and hence has no right to examine the books. But even if plaintiff is not a shareholder, he is not precluded from the remedy which he seeks. Others beside shareholders are entitled thereto. In McClintock v. Young Republicans of Philadelphia, 210 Pa. 115, a peremptory writ of mandamus was directed to defendant club to inspect the list of members. The record in the court below discloses no mention of stock, nor that plaintiff claimed to be a shareholder. This Court referred to plaintiff as a 'member,'

and held that he had the same right as the officers to have access to the rolls of the association in order to help effectuate its objects. Again, in Williamsport v. Citizens' Water & Gas Co., 232 Pa. 232, it was held that a city, which contemplated purchasing defendant corporation's water works, under the terms of an enabling statute, had the right to inspect the books of the corporation, and that the appropriate remedy to enforce that right was by writ of mandamus rather than by a bill in equity. The court pointed out that plaintiff, like a stockholder who desired to be placed in a position to assert his legal rights in an action which he proposed to bring against the corporation, was one 'with a special interest, desiring information contained in books, papers and records, so as to be in a position to assert a legal right in or to the property of a corporation' ".

Is SEPTA's interest in PTC within the principles of these decisions?

### 4. SEPTA's right to mandamus to examine PTC's books.

SEPTA's interest in PTC is as substantial, and in some ways is more substantial, than a shareholder's.

A shareholder ordinarily has only a fractional and rather indirect interest in the corporate assets. But SEPTA, as the city's assignee under the 1907 agreement, has the option to purchase the entire PTC transportation system. "An option to purchase land is a substantial interest in the land . . .": Powell Appeal, 385 Pa. 467, 474 (1956).

Moreover, SEPTA has exercised its option. It appears, therefore, that it has become bound to purchase all of PTC's assets. See the discussion by this court in Southeastern Pennsylvania Transp. Auth. v. Philadelphia Transp. Co., Court of Common Pleas No. 5, June term, 1965, no. 971, opinion filed August 27, 1965.

SEPTA's interest in PTC is also more intimate than

the usual shareholder's. This best appears from Philadelphia v. Philadelphia Transportation Co., 386 Pa. 231 (1956).[2]

There, the question was whether the lower court should have issued a preliminary injunction restraining PTC from paying a dividend. PTC's argument was similar to its argument here; it contended that only a shareholder was entitled to such relief, and that the city, under the 1907 agreement, was not and could not become a shareholder, citing, as here, Brode v. Philadelphia, 230 Pa. 434 (1911). The majority of the court, however, in an opinion by Mr. Chief Justice Horace Stern, affirmed the issuance of the injunction, and said, at pages 236-39:

"It is not necessary to discuss in detail all the provisions in the agreement of July 1, 1907, between the City and the Company's predecessor [footnote here omitted] which gave to the former extensive rights in the management and control of the Company and covered various other aspects of their relations. Suffice it to say that the City, under the terms of that agreement, has substantial direct interest in the Company's financial affairs. [The chief justice then enumerates many of the city's rights] . . .

"However, most important of all on this question is the provision of the agreement between the City and the Company which gives to the City the right to purchase all the Company's property upon any first day of July thereafter upon payment of an amount equal to the sum of the face amount, or call price if any, and accrued interest of all then outstanding bonds, and all then outstanding prior lien bonds, mortgages and ground rents on the Company's property plus the par value of all its then outstanding preferred stock and an amount equal to ten (10) dollars per share for all

---

[2] Commented upon in 19 Pitts. L. R. 287-88, 469-71 (1958).

its then outstanding common stock and the amount of its then undistributed corporate surplus, if any, this right to cover the entire transportation system and property, leaseholds and franchises of the Company at the time the City exercises the option. . . . The company contends that the City, as optionee, has no legal or equitable interest in the company's *property as such*, but it certainly does have an interest *in its right under the agreement to exercise its option* according to the terms and at the price therein provided and without any intervening impairment, if illegal, of the value of the property which is the subject of the option". (Italics supplied.)

Mr. Justice (now Mr. Chief Justice) Bell dissented from this holding. However, his dissent does not create, but rather removes, any doubt about the proper decision here. For a critical point to the Justice was that "Prior to any exercise of the option by the City, *the optionee has no interest, legal or equitable,* in or to the property subject to the option [citing many authorities; the Justice's emphasis]": 386 Pa., at page 245. The ensuing discussion indicates that had the city's option been exercised, the Justice probably would have held that the city did have status to seek to enjoin PTC from paying a dividend: 386 Pa., at pages 245-48. Here, the option has been exercised by SEPTA, as the city's assignee.

When SEPTA's interest, as thus defined, is appraised in the light of the cases discussed above, it is clear that SEPTA's complaint states a case for mandamus to permit SEPTA to examine PTC's books.

In the New Cumberland case, supra, the borough had an option to buy the water company, and was held entitled to mandamus so that it might examine the company's books; but its option was incident to an ordinance and agreement far less extensive than the 1907 agreement, analyzed in Philadelphia v. Phila-

delphia Transportation Co., supra. In the Williamsport case, supra, the city was held entitled to mandamus; but its interest was far less extensive than SEPTA's; for it simply had the right to buy the company; it had not exercised the right, as has SEPTA; and it was not bound to buy, as is SEPTA; it only wished to examine the company's books to determine net cost so that it could then decide whether to buy.[3] And, while these are the cases most closely in point, all of the cases that have been discussed above compel the same conclusion. None of them turns upon such niceties as PTC advances. Petitioner need not point to a statute compelling the corporation to sell, as compared to an agreement compelling sale or a statute authorizing sale; he does not have to be a shareholder, as compared to some one with an equal or greater interest. In urging such distinctions upon the court, PTC asks the court to take a view of mandamus more restrictive than did King's Bench, 200 years ago.

The first question must always be: ". . . to prevent disorder from a failure of justice . . . [and] where the law has established no specific remedy . . ." is mandamus needed?: Rex v. Barker, supra. And the next must be: is petitioner's claim such that he is "beneficially interested" in having mandamus?: Loraine v. Pittsburgh, Johnstown, Ebensburg & Eastern Railroad Company, supra; Kuhbach v. Irving Cut Glass Company, supra; Taylor v. Eden Cemetery Company, supra.

This is the approach taken by Mr. Justice Moschzisker in the New Cumberland and Williamsport cases, supra. It will be taken here.[4] And it compels the con-

---

[3] Indeed, while city council's resolution declared "its intention" to buy, the exercise of this intention was made contingent upon what the cost would be and on approval at a special election: 232 Pa., at page 236.

[4] Accordingly, it is unnecessary to consider various other rea-

clusion that from its complaint, SEPTA, hence experts retained by SEPTA, are entitled to examine PTC's books and records.

It is further apparent that SEPTA and its experts are entitled to inspect PTC's property other than the books and records.

It is true that the cases generally concern examination of books and records. But the reason for the writ is always to enable the petitioner ". . . to be placed in a position to assert his legal rights. . . ." See the Williamsport case, supra, 232 Pa., at page 243. To permit SEPTA's experts to examine PTC's records, but to deny them the right to examine the property that those records concern, would be an arbitrary distinction that might result in the experts being unable to give SEPTA the information it needs, and to which its complaint shows it is entitled. To echo Mr. Justice Moschzisker in the Williamsport case, supra: ". . . there is no apparent reason why the same remedy should not apply. . . .": 232 Pa., at page 244. Indeed, in the Williamsport case Mr. Justice Moschzisker added, when discussing how the trial in mandamus would proceed:

". . . the paramount issue would be the right of the city to have access to the books and records of the water company for the purpose of securing the data of cost and maintenance of the defendant's plant and the dates and amounts of dividends by it theretofore declared, and also, if desired, to make a physical examination of its works and property": 232 Pa., at page 248.

In the Kuhbach case, supra, the court, quoting earlier

---

sons that SEPTA has suggested would warrant mandamus, in particular, possible rights deriving from the fact that the 1907 agreement was authorized by statute and ordinance (cf. the Brode case, supra) and from the fact that SEPTA has the power of eminent domain: 66 PS §2008(b).

authority, approved giving a stockholder "the aid of a disinterested expert": 220 Pa., at page 433. And in Reynoldsville Boro. v. Reynoldsville Water Co., 247 Pa. 26 (1915), the court affirmed the issuance of a writ of mandamus that the water company give the borough access not only to the company's books, but "also, if desired, permission to make a final examination of the plant and property": 247 Pa., at page 28.

Accordingly, it is apparent that SEPTA's complaint "presents the substance of a case for mandamus", in that it shows that SEPTA is "beneficially interested" in and, hence, entitled to examine, PTC's records and property. Before proceeding to the remaining issues, however, one more observation will be made.

In Southeastern Pennsylvania Transp. Auth. v. Philadelphia Transp. Co., supra, this court held that SEPTA was entitled to declaratory relief regarding the validity of the 1907 agreement. One reason for the holding was that SEPTA had no other remedy available. In the course of holding that mandamus was not an available remedy, this court said, " 'Mandamus issues only where there is a clear and specific legal right in plaintiff. . . . The right . . . must be clearly established, and the writ is never granted in doubtful cases': Verratti, Appellant v. Ridley Township, 416 Pa. 242, 246 (1965)". PTC now claims that this statement shows that SEPTA is not entitled to mandamus to inspect PTC's records and property. But the statement does not show that.

As has been seen at length, SEPTA's right to inspect the records and property is, from SEPTA's complaint, "clear and specific", "clearly established" and not "doubtful". In the declaratory judgment action, that right was not at issue. The issue was whether this court had jurisdiction to entertain a complaint praying for declaratory relief regarding the validity and meaning of the 1907 agreement. There is, therefore,

no conflict between this court's decision in the declaratory judgment action, supra, and here.

5. *Herewith consideration of PTC's remaining objections.*

a. *Does SEPTA have any other remedy?*

At argument, counsel for PTC stated that the litigation regarding SEPTA's attempt to purchase the PTC system should not proceed "piecemeal": Notes of argument, page 62. And it is settled that mandamus will not issue where there is another remedy that is adequate and complete: 23 P.L. Encyc., Mandamus, §2. However, there is no such other remedy here.

SEPTA could not bring an action in equity to inspect PTC's records and property, for mandamus is an adequate remedy. See the Williamsport case, supra, which dismissed an action in equity for this reason. Nor could SEPTA move for discovery of PTC's records and for an inspection of PTC's property, for discovery is ancillary to an existing action; in general, it is confined to learning "the identity and whereabouts of witnesses" and to such discovery as "will substantially aid in the preparation of the pleadings or the preparation or trial of the case": Pa. R. C. P. 4007(a). Indeed, so far as an action such as this one is concerned, mandamus replaces discovery. Cf. Hagy v. Premier Manufacturing Corporation, 404 Pa. 330, 332 (1961). As to PTC's argument that SEPTA should be remitted to a single suit for specific performance to compel PTC to convey its assets, this court resolved the point against PTC when it decided that SEPTA is not required to seek specific performance of the 1907 agreement, but is entitled to declaratory relief: Southeastern Pennsylvania Transp. Auth. v. Philadelphia Transp. Co., supra. Moreover, mandamus is traditionally recognized as a proper method of deciding whether to bring an action in equity: Taylor v. Eden Cemetery Company, supra. Even if SEPTA could bring specific perform-

ance, therefore, it would not thereby be barred from seeking mandamus.

b. *Does SEPTA have a legitimate reason to inspect PTC's records and property?*

At oral argument, counsel for PTC argued that PTC is "faced with exactly the same situation that a householder is faced with when a doorbell rings and he looks out the window and he sees somebody there he suspects is trying to rob him": Notes of argument, page 65.

It is enough, so far as motive is concerned, if the right to examine corporate records is sought " 'in good faith and for a specific, honest purpose, and where there is a particular matter in dispute, involving and affecting seriously the rights of the relator . . .' ": Kuhbach v. Irving Cut Glass Company, supra, 220 Pa., at page 433, quoting Commonwealth v. Phoenix Iron Company, 113 Pa. 563, 572. Given relator's good faith and purpose, it is irrelevant that corporate management might object to, or disagree with, relator: Taylor v. Eden Cemetery Company, supra, allowing mandamus where plaintiff suspected mismanagement, wished to look at the books to see if there was mismanagement, and if there was, intended to file in equity for a receiver.

Here, SEPTA's complaint shows not only that SEPTA is acting for a legitimate reason, but on a matter of great public concern. For SEPTA is driven by the whip of legislative findings:

"(a) That there exists in the urban and suburban communities . . . serious mass transportation problems . . . ;

"(b) That [these] . . . have made and will continue to result in making such communities economic and social liabilities . . . ;

"(c) That the foregoing conditions cannot be effectively dealt with by private enterprise . . . without the additional aids herein granted . . . ; [and]

"(h) That it is intended that such authorities [as SEPTA] cooperate with and/or acquire existing transportation facilities [such as PTC] . . .": Act of August 14, 1963, P. L. 984, sec. 2, 66 PS §2002.

If PTC can prove its charge of bad faith, it may, but at trial, and after proper pleading. Cf. Hagy v. Premier Manufacturing Corporation, supra; and see Annotation, Purposes for Which Stockholder or Officer May Exercise Right to Examine Corporate Books and Records, 15 A. L. R. 2d 11, et seq. (1951). In the meantime, PTC's charge is without basis in, and indeed is contrary to, the record. Hence, it will be ignored.

c. *Will mandamus enforce the 1907 agreement?*

In Southeastern Pennsylvania Transp. Auth. v. Philadelphia Transp. Co., supra, this court said that ". . . mandamus will not lie . . . [because] 'mandamus does not lie at the suit of one corporation, contracting with another corporation, to enforce performance of such contracts . . . Duties . . . arising out of contract relations will not be enforced by mandamus since the use of the writ is limited to the enforcement of obligations imposed by law': Independent Brewing Co. v. Colonial Tr. Co., 273 Pa. 12, 16 (1922); and see Pennsylvania Law Encyclopedia, Mandamus, §51, at 422-23". PTC, adding the citation of Edelman v. Boardman, Secretary of Revenue, 332 Pa. 85 (1938), now not only concedes but asserts that this statement was correct. The statement, however, does not help PTC here, for it does not relate to the issues here.

In the Independent case, supra, a mortgagor asked for mandamus to compel a trustee under an indenture to make certain investments. Mandamus was denied; whether the trustee was fulfilling its duties under the indenture was for a court of chancery to decide. In the Edelman case, the claim was to recover an informer's fee. Mandamus was denied because the court found that the Secretary of Revenue was not obliged to institute any escheat proceedings. But in the course of

reaching this decision, Mr. Justice Stern, citing the Independent case, explains why mandamus is not available to enforce a contract. It is because mandamus is unnecessary; the promisee may sue for breach of contract: 332 Pa., at page 91. And when this court cited the Independent case, supra, it was in the course of noting that because mandamus could not be used to enforce the 1907 agreement, SEPTA was entitled to a declaratory judgment regarding the validity of that agreement.

But here, SEPTA does not seek to enforce any contract. Indeed, it has no contract that provides that it may examine PTC's books and property. Neither did the city in the Williamsport case, supra, nor the borough in the New Cumberland case, supra.

SEPTA does not ask, and in this proceeding cannot obtain, an order enforcing its right under the 1907 agreement to buy the PTC system. It only asks, and can at the most obtain, an order permitting it to inspect PTC's books and property so that it can raise the money to pay for the PTC system, *if* it has the right to acquire it.

This raises PTC's last objection, which is that SEPTA is not entitled to examine PTC's books and property because SEPTA's standing to do so, according to PTC, depends on the 1907 agreement, which, PTC contends, is invalid.

d. *Is the validity of the 1907 agreement now before this court?*

So far, SEPTA's right, under the 1907 agreement, to buy the PTC system is unchallenged in this court. True, PTC's president and counsel have denied before city council the validity of the 1907 agreement; and at the oral argument in this case, the denial was reiterated: Notes of argument, page 63. But neither the denial nor any reason for it yet appears in any pleading of record, at least, none filed here.

In the declaratory judgment proceeding that has

been argued here (Southeastern Pennsylvania Transp. Auth. v. Philadelphia Transp. Co., supra), PTC did not plead any invalidity in the 1907 agreement; it only said, and continues to say, now to the Supreme Court, to which it has appealed this court's decision: "Let that question be decided another day in another way".

Nor has PTC pleaded any invalidity in the 1907 agreement in this proceeding; it has filed only a general demurrer with no reasons; and such a demurrer is contrary to the procedural rules.

As has been noted, Pa. R. C. P. 1901 provides, in general, that the procedure in mandamus shall be as in assumpsit. Pa. R. C. P. 1017 provides that in assumpsit, one of the pleadings allowed is a preliminary objection in the nature of a demurrer, and Pa. R. C. P. 1028(a) provides that "Preliminary objections shall state specifically the grounds relied upon". PTC's demurrer is not specific. It says that SEPTA's complaint "fails to state a valid cause of action upon which the relief requested can be granted". No reason for this conclusion is given.

In Goodrich-Am. Civil Practice §1028(a)-1, it is said:

"In its capacity as a 'pleading' the preliminary objection must give full information to the opposing party. It must state specifically the nature of the matters objected to, and must claim definite relief.

"Matters not raised in the objection and not disclosed before the argument, cannot be argued and will not be considered by the court. . . . The pleader must steer an intelligent middle course between giving inadequate information and writing a brief in the objections".

PTC has not followed this course. Accordingly, this court will not now consider PTC's statements, unsupported and not in any pleading, regarding the validity of the 1907 agreement.

The court has considered PTC's other arguments, such as whether SEPTA's complaint shows a clear right to mandamus, but this has been because, although PTC said nothing in its demurrer to support, or even to give notice of, those arguments, it did raise them in its brief. (The arguments about "piecemeal" litigation and bad faith were perhaps mainly raised at oral argument, but they were at least suggested by the brief.) However, neither in its brief nor at oral argument has PTC advanced any reason for its assertion that the 1907 agreement is invalid. PTC's counsel has, indeed, referred at oral argument to the rule against perpetuities. But a reference is not a reason. If PTC has a reason, it will have to plead it.

6. *What form should this court's order take?*

Pa. R. C. P. 1098 provides that in a mandamus action, "At any time after the filing of the complaint, the court may enter judgment if the right of the plaintiff thereto is clear, but the judgment may be opened upon cause shown". SEPTA suggests not by motion, but at oral argument, that the court might enter such a summary judgment here.

The court might. As has been seen, so far PTC has said nothing to indicate that SEPTA's right to examine its books and property is not clear; and if it has any reason, it could assert it by filing a petition to open.

However, the court has concluded not to proceed in such a fashion. Were it to do so, the proceeding to open would "be governed by the same principles" as a proceeding to open a default judgment. The petition to open, therefore, would have to "aver not only the existence of a valid defense, but equitable considerations which appeal to the conscience of the Chancellor": Lened Homes, Inc. v. Philadelphia Department of Licenses and Inspections, 386 Pa. 50, 53 (1956). Such a test is stricter, from defendant's view, than if the issue is framed by complaint and answer; and al-

though PTC's demurrer was contrary to the procedural rules, the court is unwilling to ignore it to the extent of proceeding directly to enter summary judgment and thus possibly putting PTC at a disadvantage that more careful pleading might have avoided.

Nevertheless, because of its demurrer, PTC has been able to delay the litigation between it and SEPTA; and in this case, delay may become a matter of substance and not mere procedure. For not only is SEPTA driven by the urgency of the objectives that the legislature has charged it with accomplishing, it is driven by time; by its notice to PTC, it has committed itself to buy the PTC system by July 1, 1966.

It will not do for PTC to continue to fend SEPTA off by asserting, out of court but not in court, that the 1907 agreement is invalid. If the agreement is valid, SEPTA's complaint demonstrates that SEPTA is entitled to examine PTC's records and property. If the agreement is invalid, let PTC say so, and why, and forthwith. Otherwise, PTC may achieve by delay what it has no right to; for it may so prolong matters that even if the agreement is valid, SEPTA will be unable to raise the money, as required by the agreement.

Pa. R. C. P. 1028(d), which, as noted, applies to an action in mandamus, provides that "If the preliminary objections are overruled, the objecting party shall have the right to plead over within such time as the court shall fix". In this case, the time will be short.

Therefore, the court now enters the following

### ORDER

And now, October 26, 1965,

1. Defendants' motion to strike is dismissed.

2. Defendants' demurrer is dismissed.

3. Defendants shall file an answer to the complaint no later than November 1, 1965.